UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MICHAEL LEDET                                    CIVIL ACTION

VERSUS

STATE OF LOUISIANA, ET AL.                  NO. 23-00492-BAJ-EWD

## RULING AND ORDER

Before the Court is Defendants Christopher Eskew, Kim Bass, and Emily Bishop's **12(b)(1) And 12(b)(6) Motion to Dismiss (Doc. 5)**, which requests that Plaintiffs' claims against Christopher Eskew, Kim Bass, and Emily Bishop be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and Defendant State of Louisiana's, through the Louisiana Department of Public Safety and Corrections, **12(b)(1) and 12(b)(6) Motion to Dismiss (Doc. 24)**. Plaintiff opposes both Motions. (Docs. 9, 27). Defendants have filed Reply Briefs. (Docs. 12, 29).

For the reasons stated herein, Defendants' Motions are **GRANTED** and Plaintiff's claims are **DISMISSED**.

## I.    ALLEGED FACTS

In 2005, Plaintiff pled guilty to one count of possession of child pornography in violation of 18 U.S.C.A. §2252(a)(4)(B). (Doc. 1 at ¶ 46). This federal statute defines a minor as "any person under the age of eighteen years" and the definition of "child pornography" includes computer-generated images. 18 U.S.C.A. §§ 2256(1), 2256(8)(B). Plaintiff spent two years in federal prison, and was released in June 2007.

(Doc. 1 at ¶ 24).

There is no record of the age of the minor depicted in the pornographic materials possessed by Plaintiff, nor is there a record of whether this minor was an actual person or was computer generated. (*Id.* at ¶¶ 19, 20).

Plaintiff was required to comply with registration and notice requirements upon his release from federal prison under the Sex Offender Registration and Notification Act (SORNA). (*Id.* at ¶ 22). Plaintiff promptly registered as a Tier 1 offender once released. (*Id.* at ¶ 23).

After Plaintiff registered with the Louisiana Department of Public Safety and Corrections (the "Department"), the registration period for Tier 1 offenders was legislatively lengthened from 10 to 15 years. (*Id.* at ¶¶ 25-26). Plaintiff timely appeared for his periodic renewals at the Department after his registration in 2007, and each time his registration form indicated that he was a Tier 1 offender. (*Id.* at ¶ 27). In 2014, a deputy at the registering sheriff's office informed Plaintiff that she did not believe his Tier level was correct. (*Id.* at ¶ 28).

Louisiana law requires that for those convicted as sex offenders under federal law, the Department shall determine how long and how frequently a sex offender will be required to register while residing in Louisiana. La. Stat. Ann. § 15:542.1.3(B)(2)(a). The Department does so by "a comparison of the elements of the offense of conviction or adjudication with the elements of the most comparable Louisiana offense." *Id.* The Department's determination is to take place within sixty days of receiving the certified copies of court records from the offender. *Id.*

Plaintiff was instructed to provide the court minutes and Bill of Information from his federal conviction. (Doc. 1 at ¶ 28). Plaintiff complied with that request, and the Deputy thereafter changed Plaintiff's classification to that of a Tier 2 offender in the Louisiana State Sex Offender and Child Predator Registry (the "Registry"). (*Id.* at ¶¶ 28-29).

A Tier 2 classification would require Plaintiff to comply with sex offender registration requirements for 25 years, meaning Plaintiff's registration obligations would end in 2032 rather than in 2022. (*Id.* at ¶ 67). Defendants contend that they changed Plaintiff's classification because the Louisiana law that most closely corresponds with 18 U.S.C.A. §2252(a)(4)(B) is La. Stat. Ann. § 14:81.1, or the offense of Pornography Involving Juveniles. (*Id.* at ¶ 37). Offenders under this Louisiana statute are subject to longer and more frequent registration periods. (*Id.*). However, only actual victims that are sixteen and under qualify as "juveniles" for purposes of La. Stat. Ann. § 14:81.1. (*Id.* at ¶¶ 37, 47). La. Stat. Ann. § 14:81.1 and 18 U.S.C.A. §2252(a)(4)(B) therefore differ in their requirements as to the age of the depicted victim and as to whether the depicted victim must be a real person. (*Id.* at ¶¶ 46-47).

The Department created documentation to support this Tier change after it was enacted. (*Id.* at ¶ 32). As part of this documentation, Defendant Kim Bass, a Criminal Records Analyst employed by the Department at the time, created a "Tier Classification Summary Sheet." (*Id.* at ¶ 34). The purpose of this document was ostensibly to compare the elements of the federal child pornography statute with its Louisiana counterpart. (*Id.*). Plaintiff contends that Bass inaccurately described the

contents of the materials provided relating to his conviction by stating that the age of the minor depicted in the pornography possessed by Plaintiff was "not applicable" rather than unknown. (*Id.*). Bass also stated that the age element was satisfied for both the Louisiana and federal child pornography statutes when those depicted were under the age of seventeen. (*Id.* at ¶ 38). It is uncontested that this was a misrepresentation of the law, and Bass later testified that she knew this was not the law when she created the Tier Classification Summary Sheet. (*Id.* at ¶ 43). Defendant Emily Bishop, a Criminal Records Analyst employed by the Department at the time and the then supervisor of the Registry, signed off on this comparison and noted that she "agreed" with Bass's statements and reclassification at the bottom of the Tier Classification Summary Sheet. (*Id.* at ¶ 40). Bishop later testified that she was aware that Bass's description of the age elements for the Louisiana and federal child pornography statutes was inaccurate at the time she signed the Tier Classification Summary Sheet. (*Id.* at ¶ 45). Defendant Lieutenant Colonel Christopher Eskew, at that time a Lieutenant and the Deputy Director of the Registry, "adopted the classification as his own" and sent Plaintiff notice that his offender classification was to be changed to Tier 2. (*Id.* at ¶ 41).

## II.    PROCEDURAL BACKROUND

Plaintiff timely filed an administrative challenge to his Tier change, and a hearing before an Administrative Law Judge (ALJ) was held. (Doc. 1 at ¶ 42). The ALJ affirmed that La. Stat. Ann. § 14:81.1 and 18 U.S.C.A. 2252(a)(4)(B) were comparable, despite acknowledging that the age elements are different and that there

is no evidence that Plaintiff committed an offense under La. Stat. Ann. § 14:81.1. (*Id.* at ¶¶ 48-51). The ALJ concluded that the age elements of the offense were irrelevant since Plaintiff had failed to prove that the person depicted in the relevant pornographic materials was over the age of sixteen. (*Id.* at ¶ 52).

During this administrative proceeding, Plaintiff introduced testimony from Emma Devillier, the Chief of the Sexual Predator Unit for the Louisiana Attorney General's Office, to the United States House Judiciary Subcommittee on Crime, Terrorism, and Homeland Security. (*Id.* at ¶ 57). Ms. Devillier stated therein that in instances where there are no adjudicated facts as to the victim's age in a child pornography conviction originating under non-Louisiana law, any sex offender classification above Tier 1 is violative of due process. (*Id.* at ¶ 58).

Plaintiff appealed the ALJ's decision to the Nineteenth Judicial District Court for the Parish of East Baton Rouge, which affirmed. (*Id.* at ¶ 60). Plaintiff then appealed this decision to the Louisiana First Circuit, which also affirmed. (*Id.* at ¶ 62). The Louisiana First Circuit concluded that the difference in the age elements as between the state and federal child pornography statutes were not dispositive since both had a "common legislative purpose" of protecting society from sex offenders. (*Id.*). Plaintiff then filed a writ with the Louisiana Supreme Court, which declined to exercise its supervisory authority. (*Id.* at ¶ 63). Finally, Plaintiff sought review from the Supreme Court of the United States, which denied certiorari in June 2019. (Doc. 5-1 at pg. 2).

Four years after the Supreme Court denied certiorari, Plaintiff lodged his

Complaint with this Court, and listed as Defendants the State of Louisiana, through the Department, Lt. Col. Christopher Eskew, an employee of the Department, in his personal capacity, Kim Bass, a former employee of the Department, in her personal capacity, and Emily Bishop, a former employee of the Department, in her personal capacity. (*Id.* at ¶¶ 4-10). The Complaint contained three causes of action. (*Id.*). The first cause of action ("Claim One"), presumably brought against the Department, is for violation of Plaintiff's right to due process under the Fifth and Fourteenth Amendments. (*Id.* at pg. 19). The second cause of action ("Claim Two"), brought against each Defendant, is for deprivation of Plaintiff's federally protected rights pursuant to 42 U.S.C.A. §1983. (*Id.* at pg. 25). The third cause of action ("Claim Three"), again presumably brought against the Department, asserts that retroactive application of the registration requirements for Tier 2 offenders violates Plaintiff's right to due process. (*Id.* at pg. 31).

Plaintiff prays for compensatory and punitive damages with respect to his §1983 claims, and for attorney's fees and costs with respect to each of his claims above. (*Id.* at pg. 32). Plaintiff also prays for equitable relief in the manner of an order declaring that La. Stat. Ann. § 15:542.1.3 is unconstitutional as applied to Plaintiff because, as construed by Louisiana courts, it concludes that La. Stat. Ann. § 14:81.1 and 18 U.S.C.A. 2252(a)(4)(B) are comparable, and an injunction mandating the Department restore Plaintiff's Tier 1 offender status. In response, Defendants Bass, Eskew, and Bishop filed a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), (Doc. 5), to which Plaintiff responded. (Doc. 9). Defendants filed

a reply to Plaintiff's response. (Doc. 12). The Department has subsequently filed a separate motion to dismiss under 12(b)(1) and 12(b)(6), (Doc. 24), to which Plaintiff has responded, (Doc. 27).

### III.   LEGAL STANDARD

#### a.  Rule 12(b)(1)

Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal citations omitted). Lack of subject matter jurisdiction may be established based on 1) the complaint alone, 2) the complaint supplemented by the undisputed facts evidenced in the record, and 3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (*citing McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995)). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming*, 281 F.3d at 161 (*citing Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.1980)). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d. at 161 (*citing Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)). "Ultimately, a motion to dismiss for lack of subject matter

jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming*, 281 F.3d. at 161 (*citing Home Builders Ass'n of Miss., Inc.*, 143 F.3d at 1010).

### b. Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (*citing Twombly*, 550 U.S. at 556). When conducting its inquiry, the Court must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (internal citations omitted).

## IV.    DISCUSSION

### a. Defendants' Arguments

Defendants assert that the Court does not possess subject matter jurisdiction over Plaintiff's claims because of the *Rooker-Feldman* Doctrine. (Doc. 5-1 at pg. 6). Defendants provide that in *Rooker v. Fidelity Trust Co.* and *District of Columbia Appeals v. Feldman,* the Supreme Court unequivocally held that "federal district courts lack jurisdiction to entertain collateral attacks on state court judgments." *Liedtke v. State Bar of Tex.,* 18 F.3d 315, 317 (5th Cir. 1994) (*citing Rooker,* 263 U.S. 413 (1923); *Feldman,* 460 U.S. 462 (1983)). Further, state court judgments may not be "modif[ied] or reverse[d]" except when authorized by Congress. *Truong v. Bank of Am., N.A.,* 717 F.3d 377, 382 (5th Cir. 2013) (*quoting Union Planters Bank Nat. Ass'n v. Salih,* 369 F.3d 457, 462 (5th Cir. 2004)).

Defendants also note that the *Rooker-Feldman* doctrine usually applies "only when a plaintiff explicitly attacks the validity of a state court's judgment, . . . though it can also apply if the plaintiff's federal claims are so inextricably intertwined with a state judgment that the federal court 'is in essence being called upon to review the state court decision.'" *Ill. Cent. R.R. Co. v. Guy,* 682 F.3d 381, 391 (5th Cir. 2012) (citation omitted) (*quoting Feldman,* 460 U.S. at 483 n.16) (*citing Weaver v. Tex. Cap. Bank N.A.,* 660 F.3d 900, 904 (5th Cir. 2011)). Defendants highlight that even in cases where a plaintiff does not raise a constitutional challenge in state court proceedings, the *Rooker-Feldman* doctrine bars a federal court from hearing the constitutional challenge when said challenge is inextricably intertwined with the state court

decision. *Hultberg v. Louisiana*, 163 F.3d 1356 (5th Cir. 1998). A constitutional challenge is "inextricably intertwined" with a state court judgment when the district court is essentially being asked to review the state court decision and the challenge is not "separable from and collateral to" the merits of the state-court judgment. *Id.* (*quoting Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 21 (1987) (Brennan, J., concurring) (citation omitted)).

Instead, state courts "must resolve constitutional questions that arise during proceedings" and should the state trial court err, the "appropriate state appellate court must correct it." *Richard v. Hoechst Celanese Chem. Grp., Inc.*, 355 F.3d 345, 350 (5th Cir. 2003). "Any subsequent recourse to federal court is limited to an application for a writ of certiorari to the United States Supreme Court." *Id.* (*citing Rooker*, 263 U.S. at 416).

Applying this law to the facts here, Defendants argue that Plaintiff's claim is inextricably intertwined with the state court judgment that upheld his classification change from a Tier 1 to a Tier 2 level sex offender. (Doc. 5-1 at pg. 8). Defendants note that Plaintiff's requested relief in both the state court proceedings and the present action was to invalidate the change in Tiers, and that Plaintiff in both instances has argued that his receiving a Tier 2 classification was an error. (*Id.*). Defendants thereby conclude that Plaintiff's federal claims are inextricably intertwined with the state court judgment, and that the Court lacks jurisdiction under the *Rooker-Feldman* doctrine. (*Id.* at pg. 11). Defendants also note that the *Rooker-Feldman* doctrine bars as-applied constitutional challenges, which they allege is precisely the

sort of challenge made by Plaintiff here. (Doc. 12 at pg. 2). Defendants point to *Boudreaux v. Deutsche Bank Nat'l Tr. Co.* as support for that position. 2019 WL 4752067.

Defendants also argue that Plaintiff's Claim Two should be dismissed for failure to state a claim upon which relief can be granted. Broadly, Defendants deny that Plaintiff has suffered a constitutional injury as a matter of law. (Doc. 5-1 at pg. 13). Defendants also present different arguments in support of dismissal on behalf of each Defendant.

As to Defendants Eskew and Bishop, Defendants assert that Plaintiff's §1983 claims should be dismissed since such claims impermissibly rely upon principles of *respondeat superior* to establish liability. (*Id.* at pg. 17).

As to Defendant Bass, Defendants assert that qualified immunity bars Plaintiff's claims. (*Id.* at pg. 15).

As to the Department, Defendants argue that, as a matter of law, the Department is not a "person" for purposes of 42 U.S.C.A. §1983 and that therefore Plaintiff fails to state a claim. (Doc. 24-1 at pg. 7).

Finally, regarding Claim Three, Defendants alternatively contend that federal and Louisiana state courts have continually held that retroactive application of sex offender registration requirements does not violate state or federal constitutions. (Doc. 5-1 at pg. 19). Accordingly, Defendants conclude that each of the claims put forward in Plaintiff's Complaint should be dismissed for either lack of subject matter jurisdiction or for failure to state a claim.

Should the Court disagree with Defendants as to the arguments against Claims One and Three above, the Department additionally argues that all of Plaintiff's claims are only actionable under 42 U.S.C.A. §1983, and that the Eleventh Amendment prohibits the Court from exercising jurisdiction. (Doc. 24-1 at pg. 4). Because the Court finds Defendants' other arguments to be dispositive, the Court does not reach a conclusion on this issue.

### b. Plaintiff's Arguments

Plaintiff, in response, argues first that this action does not fall within the *Rooker-Feldman* doctrine's purview. Plaintiff states that he accepts the finality and validity of the state court ruling as to the construction of statutes at issue (namely that the state and federal child pornography statutes are comparable), but that nevertheless La. Stat. Ann. § 15:542.1.3 is unconstitutional as applied to him. (Doc. 9 at pg. 2). Plaintiff argues that the Louisiana child pornography statute is unconstitutional as applied to him because there was no determination or admission that Plaintiff violated La. Stat. Ann. § 14:81.1. (*Id.* at pg. 4).

Plaintiff argues that this distinction makes the issues in the present action separable from those addressed in state court proceedings. (*Id.* at pg. 2). Plaintiff further asserts that the issue of the constitutionality of La. Stat. Ann. § 15:542.1.3 as applied to him was not addressed in state court. (*Id.* at pg. 3). According to Plaintiff, this Court can now properly decide on constitutionality of the La. Stat. Ann. § 15:542.1.3 as applied because the state courts have construed the statute at issue. (*Id.* at pg. 4 (*citing Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941))).

Plaintiff also asserts that his constitutional claims could not have been adjudicated in the state court proceedings since such proceedings began with an administrative hearing, where constitutional arguments could not have been entertained, and that the subsequent Louisiana state courts were accordingly confined in their jurisdiction. (Doc. 9 at pg. 6).

As to Defendants' arguments to Claims Two and Three, Plaintiff asserts that Defendants erroneously rely on an improperly heightened pleading standard to conclude that his claims should be dismissed, that he has alleged sufficient factual allegations to survive a 12(b)(6) motion to dismiss, and that retroactive application of the registration requirements violates Louisiana law. (Doc. 9). Plaintiff also opposes the Department's alternative argument that the Eleventh Amendment bars the Court from exercising jurisdiction, (Doc. 27), and concludes that Defendants' Motions should be summarily denied.

### c. Analysis

Considering the Parties' arguments, the Court determines the following: As to Claim One, the Court lacks jurisdiction under the *Rooker-Feldman* doctrine. For Claim Two, Plaintiff fails to state a claim upon which relief can be granted. Regarding Claim Three, the Court lacks jurisdiction under the *Rooker-Feldman* doctrine, and alternatively Plaintiff fails to state a claim upon which relief can be granted. Accordingly, Defendants' Motions will be **GRANTED**. Further discussion is below.

### i. Claim One

Plaintiff claims that the issue of the constitutionality of La. Stat. Ann. §

15:542.1.3 as applied to him is distinct from the issues addressed in the state court proceedings. The Court disagrees. The Fifth Circuit clarified in *Burciaga v. Deutsche Bank National Trust Company* that a *Rooker-Feldman* analysis involves four elements: "1) a state court loser, 2) alleging harm caused by a state-court judgment, 3) that was rendered before the district court proceedings began, and 4) the federal suit requests review and reversal of the state-court judgment." 871 F.3d 380, 384 (5th Cir. 2017) (*quoting Houston v. Venneta Queen*, 606 Fed.Appx. 725, 730 (5th Cir. 2015) (citation omitted)). When conducting this analysis, the Court may look to the "essentials" of a plaintiff's complaint. *Liedtke v. State Bar of Texas*, 18 F.3d 315, 318 (5th Cir. 1994).

Here, Plaintiff is a state court loser and alleges constitutional injuries caused by Louisiana state court decisions, issued well before the present proceedings began, that upheld Plaintiff's classification as a Tier 2 offender. Plaintiff strongly denies that he is asking the Court here to review and reverse the decisions of the Louisiana state courts, insisting instead that his present claims are distinct from those at issue in the state court proceedings, but that denial is contradicted by Plaintiff's argument as to why La. Stat. Ann. § 15:542.1.3 is unconstitutional as applied to him. (Doc. 9 at pg. 4). Plaintiff argued throughout the state court proceedings that the federal and state child pornography statutes were not comparable, and now argues that La. Stat. Ann. § 15:542.1.3 is unconstitutional as applied to him because the state and federal child pornography statutes are not comparable. (*Id.*). In order for the Court to find in Plaintiff's favor, it would have to contradict the judgment of the Louisiana state

courts as to the comparability of the state and federal offenses. Plaintiff's claim "is, therefore, 'inextricably intertwined' with th[ose] judgment[s]," and each of the elements set forth in *Burciaga* is satisfied. *Batista v. Carter*, 796 Fed. App'x 209, 210 (5th Cir. 2020).

Further, constitutional issues that arise within state court proceedings must be decided by the state court, and it is incumbent upon the plaintiff to raise such issues in that forum. *Hoescht*, 355 F.3d at 350; *Batista*, 796 Fed. App'x at 210. Plaintiff did so. In the section of Plaintiff's petition for writ of certiorari entitled "**Mr. Ledet raised the due process issues at every level of the state proceedings below**," Plaintiff acknowledged that while administrative tribunals have limited jurisdiction, constitutional issues may be raised when such tribunals make conclusions of law as to the proper construction of a state statute. *Ledet v. Louisiana Dept. of Public Safety and Corrections*, 2019 WL 1972721, at *13-15 (emphasis in original). Plaintiff then noted that he "raised the due process issues in that context; that is**, that the agency's interpretation and application of the statute creates constitutional issues**, and that in deciding the matter, the administrative tribunal cannot give the statute a construction that would create a constitutional problem." *Id.* at *14 (emphasis added). Plaintiff further states that the alleged due process issues were "extensively" addressed in Plaintiff's post-hearing brief to the administrative tribunal, and were included in Plaintiff's briefs to the Louisiana district court, the Louisiana First Circuit, and the Louisiana Supreme Court. *Id.* at *14-15. Based on this material and on the plain language of La. Stat. Ann. § 49:978.1,

which states that a district court may reverse or remand a decision by an administrative tribunal should such decision be "in violation of constitutional or statutory provisions," it is apparent that the due process claims brought by Plaintiff here were before the presiding courts throughout the state proceedings.

Should state courts err in deciding constitutional issues, "[a]ny subsequent recourse to federal court is limited to an application for a writ of certiorari to the United States Supreme Court." *Hoechst*, 355 F.3d at 350. As noted above, Plaintiff, presumably cognizant of this rule, submitted a petition for a writ of certiorari to the United States Supreme Court several years ago, which was denied, after Plaintiff's application for a writ of certiorari to the Louisiana Supreme Court was also denied. *Ledet*, 2019 WL 1972721, at *21. Accordingly, the *Rooker-Feldman* doctrine applies to Claim One of Plaintiff's Complaint, Plaintiff exercised his only recourse to federal court for such claims years ago, and this Court thereby lacks subject matter jurisdiction over the issue of whether La. Stat. Ann. § 15:542.1.3 is unconstitutional as applied to Plaintiff.

Lastly, Plaintiff forcefully argues that Defendants mislead the Court in their briefings as to whether as-applied challenges to state statutes are prohibited by the *Rooker-Feldman* doctrine. (Doc. 20 at pg. 3). Here, it is Plaintiff who misreads the relevant precedent. As-applied constitutional challenges are barred by the *Rooker-Feldman* doctrine. *Truong*, 717 F.3d at 382 (*citing Doe v. Fla. Bar*, F.3d 1336, 1341-42 (11th Cir. 2011); *Kastner v. Tex. Bd. of L. Exam'rs*, 408 Fed. App'x 777, 779 (5th

Cir. 2010)).[1] Moreover, they are barred for good reason. An as-applied constitutional challenge of a state statute, by its very nature, relies on the facts at issue in the state court proceedings and attacks the conclusions of the relevant state courts. Plaintiff confuses the holdings of *Truong* and *Skinner*, which both instead hold that *facial* constitutional challenges to state statutes are not barred by the *Rooker-Feldman* doctrine. *Truong*, 717 F.3d at 382; *Skinner v. Switzer*, 562 U.S. 521, 532-33 (2011). Plaintiff has expressly argued that La. Stat. Ann. § 15:542.1.3 is unconstitutional *as applied*. (Doc. 1 at pg. 19). Accordingly, and because Claim One of Plaintiff's Complaint does not raise a facial challenge to the constitutionality of La. Stat. Ann. § 15:542.1.3, the Court concludes that it lacks jurisdiction over said claim due to the *Rooker-Feldman* doctrine. Claim One is therefore **DISMISSED WITHOUT PREJUDICE**.

### ii. Claim Two

The Court now turns to Plaintiff's § 1983 claims. 42 U.S.C.A. § 1983 allows a plaintiff to request relief against "every person" who, under color of law, deprives said plaintiff of their rights secured by the "Constitution and laws" of the United States. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150 (1970). To state a § 1983 claim,

---

[1] *See also Nunu v. Texas*, No. 21-20446, 2022 WL 820744, at *2 (5th Cir. Mar. 17, 2022), *cert. denied*, 143 S. Ct. 209, 214 (2022) (outlining that facial challenges to state statutes are permitted, but challenges to the "application" of a state statute are not); *Krasniqi v. Enoch*, 24 F.3d 237 (5th Cir. 1994) (stating that only *general* challenges to state statutes do not contravene *Rooker-Feldman*); *Alvarez v. Att'y Gen. for Fla.*, 679 F.3d 1257, 1263 (11th Cir. 2012) (concluding that an as-applied challenge by plaintiff to state procedures was barred by *Rooker-Feldman*); *Scheer v. Kelly*, 817 F.3d 1183, 1186 (9th Cir. 2016) (plaintiff's as-applied constitutional claims were barred by *Rooker-Feldman*).

plaintiffs must plead "'two—and only two—allegations . . . First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law.'" *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020) (*quoting Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).

Here, Plaintiff asserts that Defendants acted under color of state law to deprive him of his due process rights by reclassifying him as a Tier 2 offender pursuant to La. Stat. Ann. § 15:542.1.3 and by constructing and relying on a misleading Tier Classification Summary Sheet to support said reclassification. (Doc. 1 at ¶¶ 98, 107). For the reasons outlined in the Claim One analysis above, the Court is foreclosed from considering whether Plaintiff's reclassification as a Tier 2 offender pursuant to La. Stat. Ann. § 15:542.1.3 is unconstitutional. The Court will analyze Plaintiff's § 1983 claims against each Defendant separately.

The Department is not a "person" for purposes of § 1983, and so Plaintiff's § 1983 claims against the Department fail as a matter of law. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

Plaintiff's claims against Defendant Eskew are based solely on Eskew adopting the reclassification of Plaintiff as a Tier 2 offender. (Doc. 1 at ¶ 41). The Court is barred from considering whether this reclassification was unconstitutional by the *Rooker-Feldman* doctrine. Accordingly, Plaintiff has not alleged a constitutional injury with respect to Eskew, and Plaintiff's § 1983 claims against Eskew fail as a matter of law.

Alternatively, Plaintiff's claims against Eskew fail because they are based solely on Eskew's role as a supervisor to Defendants Bass and Bishop. A supervisory official may only be held liable under § 1983 when "(1) [the official] affirmatively participates in the acts that cause the constitutional deprivation, or (2) [the official] implements unconstitutional policies that causally result in the constitutional injury." *Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008). Further, "[i]n order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates." *Pena v. City of Rio Grande City*, 879 F.3d 613, 620 (5th Cir. 2018) (*quoting Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011)) (emphasis in original). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997).

Plaintiff has not alleged that Eskew affirmatively participated in any acts that causally resulted in Plaintiff's alleged constitutional injuries. Plaintiff only stated that Eskew "adopted" Defendants Bass and Bishop's reclassification of Plaintiff as a Tier 2 offender. (Doc. 1 at ¶ 41). Further, Plaintiff has not alleged any facts that pertain to whether Eskew disregarded a "known or obvious consequence of his action" in approving the reclassification of Plaintiff. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl.*, 520 U.S. at 410. It was neither known nor obvious that reclassification of

Plaintiff as a Tier 2 offender was unconstitutional, as demonstrably proven by the resulting decisions of the Louisiana state courts, and Plaintiff did not allege that Eskew believed otherwise. (Doc. 1). Therefore, because Plaintiff pursues a § 1983 claim against Eskew purely under a theory of vicarious liability, Plaintiff's claims against Eskew alternatively fail to state a claim upon which relief can be granted.

As to Plaintiff's § 1983 claims against Defendants Bass and Bishop, the Court again reminds Plaintiff that it lacks jurisdiction to determine whether reclassifying Plaintiff as a Tier 2 offender pursuant to La. Stat. Ann. § 15:542.1.3 is unconstitutional. The only other injury alleged by Plaintiff is that the Tier Classification Summary Sheet prepared by Bass and signed by Bishop misstated the applicable law and noted that the victim's age was "not applicable" rather than unknown. (Doc. 1 at ¶¶ 34-39). The Court cannot consider Plaintiff's argument that the Tier Classification Summary Sheet deprived Plaintiff of his due process rights insofar as it led to him being reclassified as a Tier 2 offender, (*Id.* at ¶ 107), since such an argument presupposes that Plaintiff's reclassification was unconstitutional. Instead, to present cognizable § 1983 claims against Bass and Bishop, Plaintiff must identify what due process rights were harmed by the Tier Classification Summary Sheet, standing alone.

Plaintiff has not done so. Plaintiff argues that Defendants Bass and Bishop maintained a false public record contrary to La. Stat. Ann. § 14:133 through the creation and use of the Tier Classification Summary Sheet to support Plaintiff's reclassification. (*Id.* at ¶¶ 100-105). However, even assuming that this is true and

that Bass and Bishop did maintain a false public record contrary to Louisiana law, Plaintiff must still identify what due process right is violated by the misleading statements as to the victim's age and the erroneous description of the federal and state child pornography statutes, in and of themselves. Plaintiff has not done so, and a review of relevant case law shows that courts in similar situations have held that false assertions or reports, by themselves, are not violative of any constitutional rights. *See Rich v. Palko*, 920 F.3d 288, 297 (5th Cir. 2019) (holding that detainee had no constitutional right to be free from falsities or inaccuracies in an after-the-fact police report); *Collins v. King*, 743 F.2d 248, 253 (5th Cir. 1984) (stating that inmate's claim that he was improperly charged with things he did not do, standing alone, did not constitute a deprivation of due process). Finding that Plaintiff has not sufficiently identified what constitutional right was abridged by the Tier Classification Summary Sheet itself, and that case law on the issue fails to provide support for Plaintiff's claims that false assertions in similar situations are standalone constitutional violations, the Court concludes that Plaintiff's § 1983 claims against Bass and Bishop fail as a matter of law.

Additionally, and in the alternative, even were the Court to consider Plaintiff's argument that the misleading Tier Classification Summary Sheet deprived him of his constitutional rights by supporting the allegedly erroneous decision to reclassify Plaintiff as a Tier 2 offender, the facts in Plaintiff's Complaint do not support that the Tier Classification Summary Sheet had any impact on Plaintiff's initial reclassification or the upholding thereof. Plaintiff notes in his Complaint that the

Tier Classification Summary Sheet was developed after Plaintiff was reclassified by an unidentified Deputy in the state registry, that the ALJ knew the age elements for the relevant statutes did not match when he affirmed the Department's reclassification, and that the Louisiana First Circuit was also aware that the age elements did not match when they affirmed the ALJ's determination. (Doc. 1 at ¶¶ 29, 50, 62). Based entirely on the facts alleged in the Complaint, Plaintiff has failed to provide facts sufficient to allow the Court "to draw the reasonable inference" that Defendants Bass and Bishop are liable for the alleged constitutional injury of Plaintiff's reclassification as a Tier 2 offender. *Ashcroft*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556).

Based on all of the above, the Court finds that Plaintiff's § 1983 claims against each Defendant fail as a matter of law, and such claims are therefore **DISMISSED WITH PREJUDICE**.

### iii. Claim Three

Claim Three of Plaintiff's Complaint argues that the retroactive application of La. Stat. Ann. § 15:542.1.3 is violative of due process. (Doc. 1 at pg. 31). While Claim Three is styled as a distinct cause of action, it is essentially a variation of Claim One. Plaintiff argues that La. Stat. Ann. § 15:542.1.3, as construed by Louisiana state courts, is unconstitutional as applied to him. (*Id.* at ¶ 114). In Claim One, Plaintiff argued that La. Stat. Ann. § 15:542.1.3 is unconstitutional as applied to him because of the content of the state and federal child pornography statutes. (*Id.* at ¶ 74). Here, Plaintiff argues that La. Stat. Ann. § 15:542.1.3 is unconstitutional as applied to him

because of when it was applied. (*Id.* at ¶ 114). As noted above, the *Rooker-Feldman* doctrine bars as-applied constitutional challenges. *Truong*, 717 F.3d at 382. Accordingly, the Court lacks jurisdiction over Claim Three of Plaintiff's Complaint and such claims are hereby **DISMISSED WITHOUT PREJUDICE.**

Alternatively, Plaintiff's Claim Three may be dismissed for failure to state a claim. Plaintiff's arguments in support of Claim Three differ from those in Claim One in that they rely on the Louisiana constitution. (Doc. 9 at pg. 14). La. Civ. Code Ann. art. 6 states that "[i]n the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary." Plaintiff has provided no Louisiana case law to support his position that changes to sex offender registration requirements are substantive laws. (Doc. 9 at pg. 15). To the contrary, Louisiana appellate courts have routinely held that retroactive applications of altered sex offender registration requirements are constitutional. *See State v. Trosclair*, 2011-2302 (La. 5/8/12), 89 So. 3d 340; *State ex rel. Olivieri v. State*, 2000-0172 (La. 2/21/01), 779 So. 2d 735; *Smith v. State*, 2010-1140 (La. 1/24/12), 84 So. 3d 487; *State v. Billiot*, 2012-0174 (La. App. 1 Cir. 9/21/12), 104 So. 3d 113. Further, the argument advanced by Plaintiff here was directly addressed by the Louisiana Supreme Court, which concluded that it "lacks merit." *Davidson v. State*, 2020-00976 (La. 5/13/21), 320 So.3d 1021, 1024 n.1. Accordingly, the Court concludes in the alternative that retroactive changes to sex offender registration requirements do not violate La. Civ. Code Ann. art. 6, and that Plaintiff has therefore failed to state a

claim upon which relief can be granted.

V.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' **Motions (Docs. 5, 24)** be and are hereby

**GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiffs' action be and is hereby

**DISMISSED.**

Final judgment shall issue separately.

Baton Rouge, Louisiana, this 25th day of March, 2024

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**